In the Matter of the Claim of WENDELL DAMM and Others, Respondents, against SCHREIER CONTRACTING COMPANY and Another, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, May 11, 1932.

*Charles W. Green*, for the appellants.

*John J. Bennett, Jr.*, Attorney-General [*Joseph A. McLaughlin, Assistant Attorney-General*, and *Roy Wiedersum* of counsel], and *William S. McGreevy*, for the respondents.

McNAMEE, J.   During the year 1929 the Schreier Contracting Company was engaged in the business of constructing State highways in the State of New York.   The period of the year during which this highway construction was carried on was substantially from the middle of April until the first of December, that being the usual period of State road construction in this State, but with favorable weather conditions the season was sometimes extended to the first of January.   Clifford Damm, the deceased, worked for the employer as a laborer, and on August 22, 1929, received an injury in the course of this employment which resulted in his death on December seventh of the same year.   In addition to the workmen of the employer who were engaged in the construction of highways, a professional engineer was employed throughout the year in estimating road work, as well as a hostler who cared for the horses of the employer during the period of rest.

The Industrial Board has found that the average weekly wage of the deceased was $24, and that the average annual earnings of the deceased were fifty-two times that amount, or $1,248, computed in accordance with subdivision 3 of section 14 of the Workmen's Compensation Law, on the theory that that sum represented the annual earning capacity of the deceased, in his employment, regard being had for the earnings of other employees of the same or most similar class, working in the same or most similar employment, or other employment referred to in the statute, in the same or a neighboring locality.   The deceased had worked for the employer only one month; and no proof was given of the previous earnings of the deceased, nor of the annual earnings of others as defined by the act.   The Industrial Board decided that the employment in which the deceased was engaged was not a seasonal one, but was continuous; and based that conclusion on the fact that this employer had in its continuous employment a professional engineer, and a stable man, for the purposes above indicated.

It appears undisputed in the record that State highway construction cannot be carried on in the climate of New York during the winter months, and that the State will not permit substantial parts of that work to be performed during the cold weather.   Thus because of the climate, and of the authority under which the work is done, it is necessarily a seasonal work.   As was said by VAN KIRK, J., in *Kittle* v. *Town of Kinderhook* (214 App. Div. 345, 351): " The repair of highways in this climate is a seasonal occupation." And the nature and necessary incidents of this work are not altered by the fact that a professional engineer is employed for estimating work that may never be performed, or because a barn boss is retained to care for horses while idle.   These functions are not road con-

struction any more than are the housing and insuring of the road machinery during the winter season. It thus appears from the record that the work of constructing highways in this State is not continuous, but seasonal — and that during a period not exceeding thirty-six weeks.

In its memorandum of decision the Industrial Board cites the case of *Hogan* v. *Onondaga County Highway Dept.* (221 App. Div. 636) to bring this case within the non-seasonal class and as authority for holding that the work of the decedent was continuous. The opinion in the *Hogan* case states that " Whether this employer's highway business was continuous or seasonal depends upon its method of doing that business. Ordinarily we think of road construction work in this climate as seasonal since actual road construction is discontinued during the winter months. It is possible, however, for one engaged in such a ' trade, business or occupation ' to utilize the winter months in the manufacture of road materials and the repair of machinery and equipment, thus eliminating ' the element of discontinuousness.' " And it must be observed that it was found as a fact in the *Hogan* case that with the county of Onondaga highway construction was a year-round pursuit, and that the county employed its " construction " men during the winter months in its shops and quarries preparing materials and machinery for building its highways. There the highway construction men were *actually employed* the year around. That case recognized the clear distinction between two classes of employers engaged in highway construction, the one which carried on that pursuit only during the season when road building was possible in this climate, and the other which enlarged its activities and employed its " construction " men during the winter months in preparation for the year to follow. With the one class the employment is seasonal because of the nature of the work done; and with the other it is continuous because of the practice pursued by the employer. This distinction apparently was not noted by the Industrial Board in making its findings and decision here.

In discussing the question of " average annual earnings " the Court of Appeals has said that " If the nature of the employment does not permit steady work during substantially the whole of the year, the annual earning capacity of the injured employee in the employment is the proper basis of compensation. * * * The true test is this: What were the average weekly earnings, regard being had to the *known* and *recognized incidents* of the employment, including the element of discontinuousness? " (*Matter of Littler* v. *Fuller Co.,* 223 N. Y. 369, 372.) Only in disregard of the known and recognized

incidents of the employment here could it be held that decedent's employment was continuous, and not seasonal.

But since the amendment of subdivision 3 of section 14 of the Workmen's Compensation Law (Laws of 1928, chap. 754), a claimant is not confined in his proof of wage rate to earnings in the seasonal occupation alone. Since that amendment the " annual average earnings " include both the earnings from a seasonal occupation and also the actual earnings for the remainder of the year from whatever occupation they may have been received. And in default of such actual earnings by the deceased during such remainder of the year, the earnings of other employees of the same or most similar class during the non-seasonal period may be shown to establish " annual earning capacity." And this annual earning capacity, so established, is the sum which " shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time. of the accident." (Workmen's Comp. Law, § 14, subd. 3; *Matter of Littler* v. *Fuller Co.* supra; *Orlando* v. *Snider Packing Corp.*, 230 App. Div. 557.) The deceased himself not having received any previous actual earnings, and there being no proof of the earnings of other employees of the same or most similar class during the preceding non-seasonal period, there was no evidence to sustain the award as made.

The award should be reversed, and the claim remitted to the State Industrial Board to proceed in accordance with the views herein stated.

All concur, VAN KIRK, P. J., with a memorandum, except HILL, J., who dissents and votes to affirm.

VAN KIRK, P. J. (concurring). The Industrial Board found that the employment in this case was not seasonal on the authority of *Hogan* v. *Onondaga County Highway Dept.* (221 App. Div. 636). I do not think that case applies; I do think *Deverso* v. *Parsons* (221 App. Div. 622) applies. In the instant case there was no day laborer employed during the year working in the road construction business; that is, no employee in the same class. The man who took care of the horses was not working in the same class with this deceased.

The road construction business was a seasonal employment, operated from about the middle of April until the first of December each year. It seems to be undisputed that the working days within the season were 209. During the season, therefore, the deceased's earning capacity was four times 209, or $836. This would represent his " annual earning capacity " under this sub-division, prior to the amendment of 1928, chapter 754. (*McDonald*

v. *Burden Iron Co.*, 206 App. Div. 571; *Blatchley* v. *Dairymen's League Co-operative Assn., Inc.*, 225 id. 167.) In the *McDonald* and *Blatchley Cases* (*supra*) we held that, having determined the earning capacity in the seasonal employment, earnings in some other employment could not be added thereto to establish the earning capacity for a year. In the *McDonald* case the employment was carried on but a part of each year. When not working for the Burden Iron Company the claimant had worked for the city of Cohoes and for the Cohoes Rolling Mill. We held that the earnings in these two employments could not be considered to increase claimant's annual earning capacity; earnings were confined to the seasonal employment. By the amendment of 1928 the words " or other employment as defined in this chapter " were inserted in the sixth line of subdivision 3 of section 14. This amendment supersedes the holding in the *McDonald* case. Now earnings in some " other employment as defined in this chapter " during that part of the year not covered by the seasonal employment may be shown to establish the " annual earning capacity of the injured employee in the employment in which he was working at the time of the accident." The words last quoted were in the statute before the amendment of 1928 and they are still there. We are still to ascertain an injured employee's earning capacity in the employment in which he was working when injured. In ascertaining this earning capacity we may not discard his actual earnings in the seasonal employment during the season. But there remains a part of each year during which a seasonal employee might earn something. The amendment permits, in order to show annual earning capacity, proof of the earnings of such an employee during such remaining part of the year. Thus an injured employee's earnings in the seasonal employment during the season, plus his earnings during the remainder of the year in some other employment, will constitute his annual earning capacity. In default of earnings by the claimant during the remainder of the year in such other employment the earnings of some other employee of the same or most similar class during the remainder of the year may be shown to establish earning capacity for a full year. Such earning capacity so established is the sum which reasonably represents the " annual earning capacity of the injured employee in the employment in which he was working at the time of the accident."

There is in this case no question under subdivision 5 of section 14. It is stipulated and is stated in the report of the employer that deceased's daily wage was four dollars in the seasonal employment and his weekly earnings twenty-four dollars. These are his earnings as found by the Industrial Board.

I cannot agree that subdivision 3 has been practically taken

from the statutes by the amendment of 1928. This subdivision still remains in the statute with a purpose. Subdivisions 1 and 2 cover continuous employments. There are still seasonal employments, in which work may not be had substantially the whole of a year. Also the actual earnings in such seasonal employment are still an essential part of the sum which reasonably represent the earning capacity of the injured employee in the employment in which he was working at the time of the accident. Such actual earnings must be accepted as conclusive and may not be increased by proof that in some other employment larger wages could have been had during the period of the seasonal employment. Modification by the amendment affects earnings during that period of the year only which is not covered by the seasonal employment.

In the instant case the earning capacity of the deceased during the season is established. If evidence is offered to show the earnings of other employees of the same or most similar class working in the same or similar employment, or other employment as defined in this chapter during the remainder of the year, such earnings may be added to the $836 to establish the annual earning capacity of the deceased.

There is no evidence to sustain the award as made. It should be reversed and the matter remitted to the Industrial Board to make an award under subdivision 3 as construed herein.

Award reversed and claim remitted, with costs against the State Industrial Board to abide the event.