**DEPARTMENT OF PARKS, Commonwealth of Kentucky, Appellant,**

v.

**Mary Maude KINSLOW et al., Appellees.**

Court of Appeals of Kentucky.

June 9, 1972.

Walter Winn Davis, Nunn, Travis & Ropp, Glasgow, for appellant.

H. Jefferson Herbert, Jr., Wilson, Herbert, Garmon & Gillenwater, Glasgow, for appellees.

GARDNER, Commissioner.

Mary Maude Kinslow, widow of Oren Kinslow, was awarded compensation based on her deceased husband's employment with the Department of Parks. The circuit court upheld the award and the Department of Parks appeals. We reverse.

Oren Kinslow worked at the Barren River State Park from April 16, 1969, to September 30, 1969, and again from April 1, 1970, to June 29, 1970, when he was killed in an automobile accident while he was on the job. The questions raised on appeal are (1) was Kinslow in seasonal occupation so that his average weekly wage must be considered to be one-fiftieth of his total wages for the 12 months immediately preceding his death, and if it was not a seasonal occupation, (2) was part of his pay overtime so that that part must be excluded in determining his average weekly wage?

Barren River State Park was open the year around, but from October until April the services were drastically curtailed. The record does not disclose the percentage of employees who were released during the off season. Kinslow's job was general maintenance work and garbage pickup. He knew he was being employed only from April to October. The superintendent of the park testified that Kinslow was classified as a seasonal employee. He was unemployed from October 1969 to April 1970, although he did a little work on his wife's farm for which he received no pay.

It is provided by KRS 342.140(2):

> "In occupations which are exclusively seasonal and therefore cannot be carried on throughout the year, the average weekly wage shall be taken to be one-fiftieth of the total wages which the employee has earned from all occupations during the twelve calendar months immediately preceding the injury."

The employer contends that Kinslow was a seasonal worker and therefore his wages for the 12 preceding months should be divided by 50, which would give him an average weekly wage of $33.92. It insists that the very nature of the park is that of providing summer recreation facilities and services which are seasonal.

The claimant counters by saying that the statute does not refer to seasonal workers but to " * * * *occupations* which are exclusively seasonal and therefore cannot be carried on throughout the year * * *." (our emphasis) He argues that the occupation involved is that of general maintenance and garbage pickup, which not only can be

but must be carried on throughout the year and, therefore, is not seasonal. He cites no authority upholding his view nor does the employer present us with authority supporting its view that Kinslow's occupation was exclusively seasonal. The employer attempts to bolster its contention by pointing out the incongruity existing under the board's award whereby the compensation payments are more than Kinslow's wages were for the year.

The statute does not define seasonal occupation and case law on the subject is fragmentary and inconclusive. In Damm v. Schreier Contracting Co., 235 App.Div. 478, 257 N.Y.S. 705 (1932), the court held that a highway construction laborer was engaged in seasonal work since the work was not carried on during winter months. In Hogan v. Onondaga County, 221 App.Div. 636, 225 N.Y.S. 57 (1927), however, where the county, in carrying on highway construction work, utilized the winter months to manufacture road materials and to repair machinery and equipment, the court held the county was not engaged in a seasonal occupation, although its main work was carried on during summer months. In support of claimant's position is the case of Froehly v. T. M. Harton Co., 291 Pa. 157, 139 A. 727 (1927). There a woman dishwasher was injured while employed in an amusement park during the summer months. Under a statute similar to Kentucky's, the court ruled that dishwashing was not a seasonal occupation although the amusement park was in operation only three months out of the year. The court pointed out that the clatter of dishes being washed would continue every day throughout years to come. (Perhaps the time draws near when there will be no more women dishwashers and the clatter of dishes will give way to a rumbling drone of the electric dishwasher.) The Pennsylvania court distinguished between the over-all operation of the amusement park and the individual work activities. In doing so the court mentioned that the park owners and operators were engaged in a seasonal occupation but the individual dishwasher was engaged in an occupation that must be carried on throughout the year in innumerable places.

It appears to us that the broad definition of seasonal occupation as given by the Pennsylvania court is fraught with the danger of extending the meaning of seasonal occupation so far that it becomes meaningless. A classic example of a seasonal occupation is that of fruit picking in California. Yet, under the tenor of the Froehly case, since fruit picking is being carried on somewhere in the United States every day throughout the year, the migrant worker is not engaged in a seasonal occupation. We cannot accept this broad analysis. The very existence of the Barren River State Park depends on the patronage of tourists during the period from late spring to early fall. In the popular sense, this is seasonal. It would not be surprising to see posted in front of various facilities of the park the words, "Closed for the Season." Everyone would know what that would mean.

The overriding purpose of workmen's compensation is to give recompense to an injured employee (or in this instance the widow of the deceased employee) for the loss of earning capacity due to a work-connected accident, but there are limitations. The apparent intent of the legislature in enacting KRS 342.140(2) was to reduce the amount of recovery if the employment was with a business carried on naturally only for a particular season of the year. The seasonal worker should not receive the same compensation as that of a nonseasonal worker. In the present instance Kinslow remained idle, so far as work in compensation-covered employment was concerned, six months out of the year. Under the board's award claimant would receive as compensation $2438 for 12 months, while Kinslow earned only $1829.10 for the 12 months before the accident. It might be argued that the same result (that benefits could exceed earnings) could arise where a person without previous earnings worked for a short while in nonseasonal employment when he was involved in an accident. That is true. But the compensation law

clearly permits that. Valid complaint cannot be made that a seasonal worker has no way to establish a base pay equal to a non-seasonal worker because all of the seasonal worker's wages—those earned in seasonal work as well as those earned in regular employment—for twelve months next before the injury or death are used to determine the average weekly wage. KRS 342.140 (2).

Having decided that Kinslow was engaged in a seasonal occupation, we do not get to the question of whether part of Kinslow's wages was overtime pay as provided in KRS 342.140(1) (d).

The case should be remanded to the board for an adjudication of the amount of compensation according to KRS 342.140(2).

Judgment reversed.

EDWARD P. HILL, Jr., OSBORNE, PALMORE and NEIKIRK, JJ., concur.

REED, J., dissents.

REED, Judge (dissenting).

The statute, KRS 342.140(2), by its express language applies only to *occupations* which are *exclusively* seasonal. The general maintenance employees and garbage pickup men whom I have observed impel me to the conclusion that these occupations are certainly not exclusively seasonal. Nothing in the record indicates otherwise.

I will freely concede that the type of garbage picked up may vary by seasons, and it's better to paint in the spring than in the dead of winter, but garbage is always there to be gathered, whether it be a discarded Christmas tree or the last remnants of ears of summer corn. General repairing, at least in this state, is an occupation pursued during the entire year.

To stretch the statute to deny full compensation to the injured employee in this case, the court simply amends the statutory language so that it now reads "employees" instead of "occupations." The word "exclusively" is stricken and any employee whose employer prescribes a duration of employment measured by a season will have his workmen's compensation benefits for disability cut in half if the court remains consistent. A brain surgeon hired to work for a clinic at a summer resort cannot receive but half compensation if both his hands are mangled in a work-connected accident to such an extent that they are rendered useless.

This result, in my opinion, guts the express legislative policy requiring liberal construction in favor of the injured employee, and it is also, in my view, a clear judicial invasion of the legislature's province under the guise of statutory construction. The simplicity of the language of the legislation in this particular instance actually leaves nothing to construe. I would affirm the judgment, and I therefore respectfully dissent.