DESA INTERNATIONAL, INC., Appellant,

v.

Felicia BARLOW; Special Fund; John W. Mann, Arbitrator; Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.

and

Robert L. Whittaker, Director of Special Fund, Appellant,

v.

Felicia Barlow; Desa International, Inc.; Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2000–SC–0975–WC.

Supreme Court of Kentucky.

Aug. 23, 2001.

As Modified on Denial of Rehearing Nov. 21, 2001.

W. Cravens Priest, III, English, Lucas, Priest, & Owsley, Bowling Green, for Desa International, Inc.

David R. Allen, Labor Cabinet, Special Fund, Frankfort, for Whittaker.

Ray B. White, Bowling Green, for appellee Barlow.

David R. Allen, Hon. David W. Barr, Labor Cabinet, Special Fund, Frankfort, for appellee Special Fund.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) determined that the claimant was partially disabled by carpal tunnel syndrome as a result of her work for a manufacturer of residential heating units and that the condition became manifest in July, 1996, and disabling in July, 1998. Based upon evidence that she was normally laid off at the beginning of each year and recalled in late spring or early summer due to the seasonal demand for the employer's product, the ALJ determined that she was a seasonal employee for the purposes of calculating her average weekly wage and also refused to include unemployment benefits in the calculation. The decision was affirmed by a majority of the Workers' Compensation Board (Board), but the Court of Appeals reversed with regard to the finding that the claimant was a seasonal employee. The Court's rationale was that the plain language of KRS 342.140(2) limited its application to business activities that for reasons beyond the employer's control could only be carried out during certain periods of the year. These appeals by the employer and the Special Fund followed.

The claimant was hired in 1994 and worked for the defendant-employer during the following periods: September 1, 1994 – January 10, 1995; April 26, 1995 – Decem-

ber 11, 1995; June 3, 1996 – January 9, 1997; May 6, 1997 – December 29, 1997; July 6, 1998 – July 7, 1998, at which point she quit due to her injury. If she worked elsewhere when she was laid-off, she submitted no evidence of any wages from other employment, and she argued that unemployment benefits that she received when not working should be included in the wage calculation. There was evidence that the defendant-employer usually produces heaters during about 40 weeks of the year due to the economics of the business and that its competitors follow a similar production schedule. Inventory is not accumulated until close to the selling season, and fewer heaters are produced in the year following a warm winter because orders decrease. There was also evidence that newly-hired production workers are informed that they will be laid off when heaters are not being produced, that the plant is shut down for two weeks of vacation in the summer, and that some employees work year-round maintaining the plant.

Income benefits are awarded to compensate an injured worker for having sustained an occupational disability. KRS 342.0011(11) defines an occupational disability in terms of "a decrease of wage earning capacity," and consistent with that definition, KRS 342.730 makes the amount of an income benefit a function of the worker's average weekly wage. Various methods for calculating a worker's average weekly wage are set forth in KRS 342.140.

KRS 342.140(1)(a)–(c) contain methods that are applicable to wages that are fixed by the week, month, or year. KRS 342.140(1)(e) and (f) contain special provisions that apply to workers who have worked fewer than 13 weeks or whose hourly wage has not been fixed or cannot be ascertained. KRS 342.140(1)(d) contains a method for wages that are fixed by the day, hour, or output. In instances where the worker's wages are fixed by the hour, the wages earned in each 13–week period of the year preceding the injury are added and then divided by 13. The average weekly wage for the period that is most favorable to the worker is used for calculating the benefit.

KRS 342.140(2) addresses "seasonal" employment and provides as follows:

> In occupations which are exclusively seasonal and therefore cannot be carried on throughout the year, the average weekly wage shall be taken to be one-fiftieth ($\frac{1}{50}$) of the total wages which the employee has earned from all occupations during the twelve (12) calendar months immediately preceding the injury.

Although KRS 342.140(1)(d) and (2)(e) have been renumbered since their enactment in 1964, they have otherwise remained unchanged.

KRS 342.140(5) provides that if an injured worker works concurrently for more than one employer, the wages for both employments may be considered in the average weekly wage calculation if the defendant-employer knows of the concurrent employment prior to the injury. KRS 342.140(6) includes certain other types of payments for services rendered in the average weekly wage calculation. The claimant's argument that her unemployment benefits should be included was based upon subsection (6).

The claimant's history with the defendant-employer indicated that she worked approximately 7–8 months per year. Both KRS 342.140(1)(d) and (2) take into account the injured worker's earnings during the year preceding the compensable injury. Applying subsection (1)(d), the lay-offs would have a minimal effect, if any, on the average weekly wage that was used to calculate the claimant's benefit because the benefit would be based upon the average

amount she earned per week during the highest 13–week period of the year. Applying subsection (2), the earnings for the entire year are averaged over a 50–week period and, therefore, the claimant's lack of earnings during the lay-offs would result in an average that was considerably less than the amount she earned during the weeks that she worked. Simply put, the claimant's income benefit would be greater under subsection (1)(d). Hence, the controversy.

In *Department of Parks v. Kinslow*, Ky., 481 S.W.2d 686, 688 (1972), the injured worker did general maintenance and garbage pickup at a state park from April to October but was unemployed from October to the next April when services at the park were drastically curtailed. Focusing upon the statute's use of the word "occupations," he argued that because maintenance and garbage pickup were occupations that both can and must be performed year-round, they were not seasonal; however, such a construction of KRS 342.140(2) would have resulted in a workers' compensation benefit that exceeded his earnings for the year. Based upon the seasonal nature of the patronage at the park and, therefore, the seasonal need for his services, we concluded that the employment was seasonal and that for the purposes of KRS 342.140(2) his occupation was seasonal. We characterized as overly broad a construction of KRS 342.140(2) that would have viewed an occupation as being seasonal only if it could not be carried on throughout the year. Citing a fruit picker in California as being the "classic example" of a worker who was engaged in a seasonal occupation, we refused to adopt the view that the occupation was not seasonal simply because it was done somewhere in the United States at all times of the year. We explained that the apparent intent of the legislature was to reduce a worker's recovery if the employment was "with a busi-

ness that carried on naturally for only a particular season of the year" and that, other things being equal, seasonal workers should not receive the same compensation as those who work year-round.

We revisited this matter in *May v. James H. Drew Shows, Inc.*, Ky., 576 S.W.2d 524 (1978), wherein the injured worker was a high school student who worked as a roustabout for a traveling carnival while it visited his hometown. Reversing a finding that the occupation was seasonal, we explained that whether an occupation is considered to be seasonal is based upon what the injured worker's job, itself, entails. A job is not seasonal simply because the worker plans to work only for the summer. Thus, work as a lifeguard at an outdoor pool in Kentucky is seasonal; whereas, work as a roustabout for a traveling carnival is not. Reconciling the decision with *Department of Parks v. Kinslow, supra*, we explained that *Kinslow* did not address whether a migrant fruit picker who moved with the harvest in order to work continuously was or was not a seasonal worker. We concluded that a roustabout with Drew Shows moved with the carnival and worked throughout the year; thus, the injured worker was not a seasonal employee simply because he chose to work only for the summer or because carnivals do not play in Kentucky during the winter. *Id.* at 526–27.

More recently, we affirmed a finding that work performed by a particular paving-company employee was not seasonal. In that case, evidence established that the injured worker assisted with maintenance work in the company shop during the winter months, that the company filled potholes with cold mix at that time, that the company's paving work was affected by the weather year-round, and that other local paving companies worked year-round. Affirming, we pointed out that the findings

required by KRS 342.140(2) must take into account the unique circumstances of each case and that the fact that the injured worker worked for the company year-round should not be overshadowed by the fact that paving is dictated by the weather. *Travelers Insurance Co. v. Duvall,* Ky., 884 S.W.2d 665, 667 (1994).

Although the Court of Appeals has adopted a literal construction of KRS 342.140(2), such a construction is contrary to the views that were expressed in the prior decisions of this Court and, we believe, to the purpose of the provision. Furthermore, despite undertaking several major revisions of Chapter 342, the legislature has not seen fit to amend KRS 342.140(2) in the many years since those decisions were rendered. Under those circumstances, we are persuaded that the legislature views the construction of KRS 342.140(2) that we have expressed in *Kinslow, supra, May, supra,* and *Duvall, supra,* as being consistent with its intent.

The purpose of KRS 342.140 is to determine a given worker's wage-earning capacity so that the resulting income benefit will be based upon a realistic estimation of what the worker would have expected to earn had the injury not occurred. In other words, by operation of KRS 342.140 and KRS 342.730, the amount of the benefit increases in proportion to the amount of income that the worker has lost due to injury. Where a worker is employed by the defendant-employer for more than a year preceding the compensable injury, calculation of the worker's average weekly wage under either subsection (1)(d) or (2) takes into account the worker's earnings during the entire year preceding the injury. All other things being equal, the annual wage-earning capacity of a worker whose job involves only 7–8 months of work per year will not be as great as that of a worker who works year-round and, for that reason, such a worker is not entitled to receive as great an income benefit as a worker who works year-round.

We conclude that the ALJ did not misconstrue KRS 342.140(2). The finding that the claimant was a seasonal employee was properly supported by the evidence, and it should not have been reversed by the Court of Appeals. For those reasons, the decision of the Court of Appeals is hereby reversed, and the decision of the ALJ is reinstated.

All concur.