COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

ATLANTIC INDUSTRIAL INC.,
A/K/A ATLANTIC SCAFFOLDING     §          No. 08-12-00093-CV
COMPANY AND FAUSTINO
MURILLO,                       §          Appeal from

　　　　　　　　Appellants,      §          327th District Court

v.                             §          of El Paso County, Texas

EUGENE BLAIR, III,             §          (TC # 2006-5947)

　　　　　　　　Appellee.        §

## **O P I N I O N**

Atlantic Industrial, Inc. a/k/a Atlantic Scaffolding Company ("Atlantic") and Faustino

Murillo appeal a judgment entered against them arising from an automobile accident.

### **FACTUAL AND PROCEDURAL SUMMARY**

A serious automobile accident occurred in El Paso on Sunday, November 20, 2005.

Faustino Murillo, driving a pickup truck southbound at an estimated 100 m.p.h. on a roadway

with a speed limit of 55 m.p.h., crossed into the northbound lanes of travel and sideswiped a

minivan driven by Eugene Blair. Murillo then struck another vehicle, lost the front wheels of his

truck, and traveled another 200 feet before coming to rest. Murillo was subsequently arrested for

driving while intoxicated. Blair suffered severe back injuries as a result of the accident. Murillo

conceded at trial that he was solely responsible for the wreck.

Atlantic Industrial, Inc. is a scaffolding company, and has a contract for the provision of scaffolding at a refinery in El Paso. At the time of the accident, Murillo was employed as Atlantic's on-site manager. Blair alleges that Murillo was on call at the time of the accident, and that he was driving to work. Blair relies on these and other facts to establish that Murillo was in the course and scope of his employment. Alternatively, Blair alleged negligent entrustment based on Atlantic's provision of a driving allowance to Murillo.

The case was tried to a jury in November 2011. The trial court submitted three liability questions: (1) a *respondeat superior* question inquiring whether Murillo was in the scope of his employment with Atlantic at the time of the accident, (2) a negligent entrustment question as to Atlantic, and (3) a proportionate responsibility question seeking to apportion fault between Atlantic and Murillo. As Murillo stipulated to having solely caused the accident, no negligence or proximate causation question was submitted with regard to him. The jury answered both the *respondeat superior* and negligent entrustment questions affirmatively, apportioned fault between Atlantic and Murillo at 60% and 40% respectively, and found total damages in the amount of $604,532.80. No gross negligence or exemplary damages questions were submitted to the jury.

The trial court conducted a hearing to enter judgment on February 2, 2012. Blair's counsel asked the court to disregard the jury's answer to the apportionment of fault and impose joint and several liability against Atlantic and Murillo. The trial court agreed, and entered judgment against Atlantic and Murillo jointly and severally on February 8, 2012. Atlantic complains on appeal that there was no evidence Murillo was within the course and scope of his employment at the time of the accident, or that it negligently entrusted Murillo with a vehicle. Accordingly, it argues that the trial court erred in denying its motions for directed verdict and

2

judgment notwithstanding the verdict on these issues, and that it erred in submitting course and scope and negligent entrustment questions to the jury.

## STANDARD OF REVIEW

Judgment notwithstanding a jury verdict is proper only when the law does not permit reasonable jurors to reach a different result. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005). A trial court may render judgment N.O.V. only if a directed verdict would have been proper, or if no evidence supports the jury's findings. TEX.R.CIV.P. 301. The test for legal sufficiency is the same for judgments notwithstanding the verdict, directed verdicts, and appellate no-evidence review. *City of Keller,* 168 S.W.3d at 823. We will thus review these points together.

When reviewing for legal sufficiency, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id.* We credit favorable evidence if a reasonable juror could, and disregard contrary evidence unless a reasonable juror could not. *Id.* If the evidence at trial would enable reasonable and fair-minded people to find the facts at issue, then the evidence is legally sufficient. *Id.* Because jurors are the sole judges of witness credibility and the weight to give to testimony, an appellate court cannot substitute its opinion for that of the jury. *Id.* at 819.

## *RESPONDEAT SUPERIOR*

Generally, a person has no duty to control the conduct of another. *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1983). Under the theory of *respondeat superior,* however, an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of his employment. *Baptist Memorial Hospital System v. Sampson,* 969 S.W.2d 945, 947 (Tex. 1998). This requires proof that the employee is acting: (1)

within the general authority granted by the employer, (2) in furtherance of the employer's business, and (3) for the accomplishment of an object for which he is employed. *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 34 (Tex.App.--El Paso 2006, no pet.), *citing Buck v. Blum*, 130 S.W.3d 285, 288 (Tex.App.--Houston [14th Dist.] 2004, no pet.). The employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002), *citing Smith v. M Sys. Food Stores, Inc.*, 156 Tex. 484, 297 S.W.2d 112, 114 (1957). Accordingly, "if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Id. citing ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147 (Tex.App.--El Paso 1996, writ denied).

The accident occurred on a Sunday afternoon at approximately 2:45 p.m. Murillo had been driving around El Paso for several hours beforehand. He had no "pre-designated destination," but was instead just driving aimlessly, thinking about his marital problems and pending divorce. He left his residence early that morning around 6:30 a.m. Although he recalled stopping at a grocery store and a gas station, he could recall virtually no other details about where he had been. He had a bottle of whiskey in his truck and began drinking around 10 a.m. Sundays were not regular work days for Murillo, but he was on call anytime the refinery shut down its operations for maintenance, an event referred to as a "turnaround," requiring the erection of scaffolding. Murillo testified that the refinery was not in a turnaround on the day of the accident, but that it might have been experiencing an "outage," which is a smaller version of a turnaround. Nonetheless, Murillo conceded that he was also on call during outages "most of

4

the time," and may have been that day.[1] While Murillo denied that he had been anywhere near the refinery on the day of the accident, the evidence revealed that he was north of it at the time of the accident, heading in a southerly direction. Murillo was provided with an identification hang-tag for his truck that was necessary to gain access to the refinery. He hung the tag from his rearview mirror when he was at work, but always placed it in his glove box when he was not. The tag was hanging from the vehicle's mirror at the time of the accident. Murillo's cell phone records indicate that he made several telephone calls while he was cruising around town. Five of these calls were made between 9 a.m. and 10 a.m. to a local El Paso telephone number that Murillo could not identify. Blair's attorney inquired whether this was the telephone number of an Atlantic employee, but Murillo could not recall. Around 11 a.m., Murillo telephoned his direct supervisor at Atlantic, Richard Williams. Murillo could not recall the specifics of this conversation, except that it partially concerned Murillo's marital difficulties. He first denied that he and Williams discussed work, but then conceded that it was possible. Although the El Paso police officers took an inventory of the items in Murillo's truck prior to arresting him, they did not attempt to inventory the contents of the bed of his pickup, as it was covered with a locked, fiberglass bed cover. Murillo claimed that he was not carrying any tools or other work related materials and that he had not made any purchases on Atlantic's behalf that day. At best, these facts enabled the jury to reasonably conclude that Murillo was on call at the time of the accident. Based on the general contradictory nature of Murillo's testimony as a whole, the jury also could have reasonably concluded that Murillo was on his way to the refinery. Standing alone, however, these facts do not establish *respondeat superior* liability. Being subject to call, without

---

[1] Although he was not specific as to exact dates, Murillo also testified that the refinery had gone through a regular turnaround during the month of November of 2005 (the month of the accident), and agreed that as the site manager, he was "on duty at all times" during a turnaround.

5

more, is insufficient to place an employee within the course and scope of his employment. *See J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 637 (Tex.App.--San Antonio 1993, no writ); *Smith v. Garza*, 432 S.W.2d 142, 144-145 (Tex.Civ.App.--Houston [1st Dist.] 1968, no writ.); and *Thomas v. Travelers Insurance Company*, 423 S.W.2d 359 (Tex.Civ.App.--El Paso1967, writ ref'd). And even assuming that the evidence was sufficient to support a determination that Murillo was on his way to the refinery at the time of the accident, an employee generally is not in the course and scope of employment while driving a vehicle to and from his place of work. *London v. Texas Power & Light Co.,* 620 S.W.2d 718, 720 (Tex.Civ.App.--Dallas 1981, no writ). An exception to this general rule exists when an employee "has undertaken a special mission at the direction of his employer or is otherwise performing a service in furtherance of the employer's business with the express or implied approval of the employee." *Chevron, U.S.A., Inc. v. Lee*, 847 S.W.2d 354, 356 (Tex.App.--El Paso 1993, no writ), *citing Gebert v. Clifton,* 553 S.W.2d 230, 232 (Tex.Civ.App.--Houston [14th Dist.] 1977, writ dismissed).

The strongest inference that can be drawn from the evidence is that Murillo was driving towards the refinery to perform work related to erecting scaffolding for a turnaround. But this sort of work was a normal function of his employment, as was being on call during a turnaround. While Murillo had spoken to his direct supervisor some three and-a-half hours prior to the accident, there is no evidence that he was given special instructions or tasks. Normal travel to his place of employment does not qualify as a special mission. *See Lee*, 847 S.W.2d at 356.

Blair next relies on the fact that Atlantic provided Murillo with a decal for the side of his truck bearing Atlantic's logo and telephone numbers. The decal was on the truck at the time of the accident. Under the "branded vehicle doctrine," a vehicle displaying a company's logo supports an inference or presumption that the company owns the vehicle and that its driver is an

6

agent of the company. *Rodriguez v. United Van Lines, Inc.,* 21 S.W.3d 382, 383-84 (Tex.App.--San Antonio 2000, pet denied); *Kimbell Milling Co., v. Marcet*, 449 S.W.2d 100, 103 (Tex.App.--San Antonio 1969, no writ). As noted in *Rodriguez*, "the very nature of the doctrine contemplates that the opposing party may bring forth evidence to refute ownership." *Id.*, *citing Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 358 (Tex. 1971). Thus, conducting a review of both the evidence in support of the branded vehicle doctrine as well as the facts rebutting it is not inconsistent with the standards of a no-evidence review. *Id.* The presumption of agency under the doctrine--i.e., that the driver was the company's employee and was within the course and scope of his employment--stems directly from the company's presumed ownership of the vehicle. *Hunsucker v. Omega Industries*, 659 S.W.2d 692, 695-697 (Tex.App.--Dallas 1983, no writ); *Walker v. Johnston*; 236 S.W.2d 534, 541 (Tex.Civ.App.--San Antonio 1951, writ dism'd).

Murillo's testimony effectively rebutted any inference that could have otherwise been drawn under the branded vehicle doctrine. Murillo testified that he, not Atlantic, owned the truck he was driving at the time of the accident. The logo was on the truck for identification purposes while at the refinery. But the logo was also on the truck whenever Murillo used the it for his own purposes, as it was his personal vehicle that he used for transportation every day. We sustain Atlantic's points of error regarding *respondeat superior*. The evidence adduced at trial is legally insufficient to support a determination that Murillo was within the course and scope of his employment with Atlantic at the time of the accident. There was no evidence that Murillo was acting in the furtherance of Atlantic's business or for the accomplishment of an object for which he was employed.

7

## NEGLIGENT ENTRUSTMENT

Blair's second vicarious liability theory against Atlantic is negligent entrustment. Where, as here, no gross negligence claim is submitted, negligent entrustment serves not as an independent cause of action, but as manner of establishing vicarious liability. *Rosell v. Central West Motor Stages, Inc.*, 89 S.W.3d 643, 654 (Tex.App.--Dallas 2002, pet. denied), *citing Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex.Civ.App.--Tyler 1979, writ ref'd n.r.e.). As such, negligent entrustment and *respondeat superior* are mutually exclusive modes of recovery. *Id.*

To prevail on a negligent entrustment theory, a plaintiff must prove that: (1) the owner entrusted the automobile, (2) to an unlicensed, incompetent, or reckless driver, (3) whom the owner knew or should have known was unlicensed, incompetent, or reckless, (4) the driver was negligent, and (5) the driver's negligence proximately caused the accident and the plaintiff's injuries. *Goodyear Tire and Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007).

Several Texas courts have concluded that ownership of the vehicle is not absolutely required. *See Fox-Taylor v. Auto Market, Inc.*, No. 03-08-00158-CV, at *1 n.1 (Tex.App.--Austin Aug. 15, 2008, no pet.)(mem. op.); *Morris v. JTM Materials, Inc.,* 78 S.W.3d 28, 52 (Tex.App.--Fort Worth 2002, no pet.); *De Blanc v. Jensen*, 59 S.W.3d 373, 376 (Tex.App.--Houston [1st Dist.] 2001, no pet.); *Rodriguez v. Sciano,* 18 S.W.3d 725, 728 (Tex.App.--San Antonio 2000, no pet.); *Loom Craft Carpet Mills, Inc. v. Gorrell,* 823 S.W.2d 431, 432 (Tex.App.--Texarkana 1992, no writ). These cases hold that a non-owner may be liable for negligent entrustment when it has the right to control the vehicle. "[I]t is also essential that the party sought to be held legally responsible have the right of control over the vehicle." *McCarty*

8

*v. Purser*, 379 S.W.2d 291, 294 (Tex. 1964). *See also Fiallos v. Pagan-Lewis Motors, Inc.*, 147 S.W.3d 578, 584 (Tex.App.--Corpus Christi 2004, pet. denied).

Turning to the facts relevant to the jury's affirmative negligent entrustment finding, there is no question that Murillo was a reckless driver. Murillo had a long history of arrests for driving while intoxicated. He had two out-of-state DWI arrests prior to the accident--one in Colorado, and one in Oregon. He also had three DWI arrests in Texas before this accident, at least two of which resulted in convictions. There was also evidence that Atlantic knew of at least some of Murillo's DWI arrests. In fact, one of Murillo's supervisors at Atlantic provided the funds for Murillo to bond out of jail following one of his these arrests. The only remaining issues are the ownership and right of control of the truck Murillo was driving.

There is no dispute that Murillo was the owner of the pickup. The parties do dispute whether Atlantic nonetheless had a right of control. In support of this element of negligent entrustment, Blair relies on a monthly vehicle allowance that Atlantic paid to Murillo. It was Atlantic's practice to either provide a company vehicle to managers like Murillo or to compensate them for the expense of using their own vehicle. Atlantic was paying Murillo a vehicle allowance at the time of the accident. Specifically, Murillo received an allowance of $500 a month which was later increased to $750 per month. Atlantic, in turn, received $850 a month from the refinery for Murillo's use of his truck. In other words, under the contract between Atlantic and the refinery, Atlantic received more for the use of Murillo's truck than it paid to Murillo as a vehicle allowance. We are aware of no Texas case holding that the provision of a vehicle allowance, without more, subjects an employer to liability via negligent entrustment.[2] This court has previously considered an analogous case. *See Williams v. Chaney*,

---

[2] Likewise, Atlantic's provision of a vehicle allowance to Murillo does not itself establish *respondeat superior* liability. Several Texas courts, including this court, have so held. *See*, *e.g.*, *Arbelaez v. Just Brakes Corp.*, 149

620 S.W.2d 809, 810 (Tex.Civ.App.--El Paso 1981, writ ref'd n.r.e.). There, an employer loaned his unlicensed employee funds to buy a pickup truck and took repayment out of the employee's salary. *Id.* The employer also paid for the employee's purchases of oil and gas for the truck, which he likewise took out of the employee's pay. *Id.* Before the employee had fully repaid the loan, he was involved in a serious accident while operating the truck. *Id.* This court held that the employer could not be liable for negligent entrustment under these facts because he lacked any right of control. *Id.* "There is nothing in that evidence that would give the [employer] such legal control over the pickup as would give him the right to turn it over to [the employee] or to deprive him of its use. It was simply not his to entrust." *Id.; see also Rush v. Smitherman*, 294 S.W.2d 873, 875 (Tex.Civ.App.--San Antonio 1956, writ ref'd). A more recent case has also considered the liability of a non-owner under a negligent entrustment theory. *See De Blanc*, 59 S.W.3d at 376. There, the survivors of a woman killed by an intoxicated driver sued the driver's parents. *Id.* at 374. The parents did not own the truck; their adult son was the legal owner. *Id.* However, the parents had previously exercised some control by moving the truck to their home while their son was incarcerated in a rehabilitation facility. *Id.* at 375. When their son was released, the parents attempted to keep him from driving, but he regained possession and began driving it, ultimately resulting in the accident that was the basis of the suit. *Id.* The plaintiffs argued that the parents' earlier display of control sufficiently supported their negligent entrustment claim. *Id.* at 376. The court disagreed, holding that "[r]egardless of whether [the] parents exercised control over the truck when [their son] was incarcerated, they did not have the *right* to control it." [Emphasis in original]. *Id.* Cases like *Williams v. Chaney*, *Rush*, and *De Blanc* establish

---

S.W.3d 717, 727 (Tex.App.--Austin 2004, no pet.); *Wilson v. H.E. Butt Grocery Co*., 758 S.W.2d 904, 907 (Tex.App.--Corpus Christi 1988, no writ); *London,* 620 S.W.2d at 719; and *ACME Energy Services, Inc. v. Aranda*, 08-02-00205-CV, 2004 WL 868486, at *3 (Tex.App.--El Paso April 22, 2004, pet. denied)(mem. op.).

that while a non-owner can be liable for negligent entrustment, liability can only flow from the right to control the vehicle. *Williams*, 620 S.W.2d at 810; *Rush*, 294 S.W.2d at 875; and *De Blanc*, 59 S.W.3d at 376. Without control there can be no liability. *McCarty*, 379 S.W.2d at 294. The fact that Atlantic paid a vehicle allowance to Murillo did nothing to vest it with control over Murillo's truck. Atlantic paid the monthly vehicle allowance to Murillo no matter how many miles he drove. Murillo was not required to account for how he used the truck or how he spent the vehicle allowance. Murillo explained that while there were rules he had to follow when he used his truck at the refinery, when he was not working he could use the truck in any manner he saw fit.

We sustain Atlantic's points of error regarding negligent entrustment. The evidence presented at trial conclusively established that Atlantic did not own Murillo's truck, and was otherwise legally insufficient to support a determination that Atlantic had any right of control.

## ENTRY OF JUDGMENT

Finally, both Atlantic and Murillo complain that the trial court erred in disregarding the jury's answer to the apportionment of fault and imposing joint and several liability. Having sustained Atlantic's points of error attacking the findings of *respondeat superior* and negligent entrustment, the apportionment of fault is immaterial and we need not address it.

## BLAIR'S CROSS APPEAL

In a cross point, Blair challenges the trial court refusal to charge the jury on direct liability, a general negligence question pertaining to Atlantic. This argument is premised on the argument that Atlantic, in light of its knowledge of Murillo's reckless driving history, should have foreseen that transferring Murillo to El Paso to work with no immediate supervision at a job that required him to drive would endanger the general public.

11

As a general rule, "an employer owes no duty to protect the public from the wrongful acts of its off-duty employees that are committed off the work site." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 405 (Tex. 2009). An exception exists "when, because of an employee's incapacity, an employer exercises control over the employee." *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 311 (Tex. 1983). In that limited circumstance, the employer owes a duty to third persons to act with reasonable care, even if the employer initially had no duty to act. *Id.* This stems from the rule that "[o]ne who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby." *Loram Maintenance of Way, Inc. v. Ianni*, 210 S.W.3d 593, 597 (Tex. 2006), *quoting Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119-20 (Tex. 1976).

For this special duty to third persons to arise, however, the employer must not only have some knowledge of the employee's intoxication or incapacity, but must also perform some affirmative act of control over the employee. *DeLuna v. Guynes Printing Co. of Texas, Inc.*, 884 S.W.2d 206, 210 (Tex.App.--El Paso 1994, writ denied). Simply knowing that an employee is intoxicated or incapacitated is not enough for the duty to arise. *Otis Engineering*, 668 S.W.2d at 309; *Greater Houston Transportation Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The duty is instead triggered by the employer's affirmative exercise of control over the incapacitated employee. *Otis Engineering*, 668 S.W.2d at 309, 311.

For instance, in *Otis Engineering*, a duty to third persons arose when an employer instructed an extremely intoxicated employee to leave work because of his intoxication and escorted him to his vehicle in the parking lot. *Id.* at 308. The employee caused a fatal accident while driving home, killing two women. *Id.* The Supreme Court held that the employer owed a

12

duty to third persons not because it knew the employee was intoxicated, but because it exercised affirmative control by sending the employee home. *Id*. at 311; *Phillips*, 801 S.W.2d at 526. Once the employer took that affirmative step, it had a duty to act reasonably by calling the employee's wife or having another employee drive him home. *Id.*

The facts here do not implicate the *Otis* exception. There is no evidence that Atlantic was aware of Murillo's intoxication on the day of the accident, or that it exercised control over him as a result of any such knowledge. Further, any control that Atlantic exercised over Murillo prior to his intoxication on the day of the accident will not trigger the exception. "*Otis* requires an affirmative act of control following, and prompted by, the employee's incapacity." *Nabors Drilling*, 288 S.W.3d at 407, *citing Otis Engineering*, 668 S.W.2d at 311. "We have never extended *Otis* to create a duty where an employer's only affirmative act of control preceded the employee's shift and incapacity and amounted only to establishing work conditions that may have caused or contributed to the accident." *Id.* Accordingly, we overrule Blair's sole cross point.

We reverse and render judgment that Blair take nothing against Atlantic. The judgment in all other respects is affirmed.


August 28, 2014
                                        ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

13