RENDERED: FEBRUARY 16, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000249-WC

COMMONWEALTH OF KENTUCKY,                                          APPELLANT
UNINSURED EMPLOYERS' FUND


ON APPEAL FROM COURT OF APPEALS
V.                        CASE NO. 2015-CA-001854-WC
WORKERS' COMPENSATION NO. 11-WC-00211


KARA SIDEBOTTOM (A/K/A KARA                                        APPELLEES
HARVILLE); WHITNEY BRAND INC.;
HON. GRANT ROARK, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD


## OPINION OF THE COURT BY JUSTICE VENTERS

### AFFIRMING

The Commonwealth of Kentucky, Uninsured Employers' Fund (UEF)

appeals from a decision of the Court of Appeals that upheld an opinion issued

by the Workers' Compensation Board (Board). The Board determined that the

Administrative Law Judge (ALJ) had properly calculated Sidebottom's average

weekly wage, affirming the conclusion of the ALJ that Appellee, Kara

Sidebottom, was a variable wage employee (salary plus tips) at the time of her

work-related injury and that her workers' compensation benefits must,

therefore, be calculated according to KRS 342.140(d), rather than KRS 342.140(1)(a), which applies to claimants who are paid a fixed weekly wage.[1]

Our review on appeal proceeds under the following standards. "An award or order of the administrative law judge . . . shall be conclusive and binding as to all questions of fact . . . ." KRS 342.285. When reviewing a decision of the Board, we will affirm absent a finding that the Board has misconstrued or overlooked controlling law or has so flagrantly erred in evaluating the evidence that a gross injustice has occurred. *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687–688 (Ky. 1992).

We find no significant disagreement about the facts as determined by the ALJ; the issue in dispute is whether the ALJ, and hence the Board, applied the correct statute to those facts in determining Sidebottom's average weekly wage. For the reasons stated below, we affirm the Court of Appeals.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

When Kara Sidebottom began her job as a waiter at Whitney's Diner in 2009, her duties included seating customers, taking orders, serving customers, stocking the salad bar, bussing tables, and collecting payment from customers. She was paid $2.10 per hour plus tips and she generally worked at least forty hours per week and often "much more."

---

[1] The Board's decision, affirmed by the Court of Appeals, also vacated part of the ALJ's award not pertinent to this appeal and remanded the matter to the ALJ for further consideration regarding the application of the three-times multiplier provided by KRS 342.730(1)(c)1.

Beginning May 1, 2010, the owner of the business gave Sidebottom increased employment responsibilities in addition to the ordinary duties she performed as a waiter. Concurrent with the increased responsibilities, Sidebottom's pay structure was changed from the hourly rate of $2.10 plus tips to a weekly rate of $100.00 plus tips.

Prior to the May 1 transition, Sidebottom's employer reported her income from tips to the Internal Revenue Service as required by law. Afterwards, although Sidebottom continued to report her tips to her employer, the employer failed to report her income from tips to the IRS. Sidebottom did not learn that her employer had not reported her tips until she received her 2010 W-2 form. Sidebottom did not include her unreported tip income on her 2010 personal income tax return.

On December 3, 2010, seven months after her "promotion," Sidebottom fell during the course of her employment and injured her spine. She eventually underwent spinal fusion surgery. In due course, she filed a workers' compensation claim in connection with the work-related injury.

In determining Sidebottom's weekly compensation benefit, the ALJ applied KRS 342.140(1)(d). This statute sets forth the process for calculating the average weekly wage for a claimant who, at the time of her injury, was being paid a wage that varied "by the output of the employee," which includes workers being compensated through tips. The ALJ determined that even though Sidebottom's tips at the time of her injury were not reported to the IRS,

she was still at that time a variable wage employee working on a "wage plus tips" arrangement.[2]

The UEF maintained that at the time of her injury Sidebottom was a salaried, or fixed wage, employee whose average weekly wage should have been determined in accordance with KRS 342.140(1)(a) using the amount of $100.00 per week. The calculation advocated by UEF would have yielded a substantially lower benefit award for Sidebottom. The Board disagreed and affirmed the ALJ's application of KRS 342.140(1)(d) for determining Sidebottom's average weekly wage. The Court of Appeals affirmed, and the appeal to this Court ensued.

## II. ANALYSIS

In support of its argument that Sidebottom's average weekly wage should have been calculated in accordance with KRS 342.140(1)(a) as if she was a fixed weekly wage employee, the UEF relies upon KRS 342.140(6). That statute defines "wages" for purposes of determining workers' compensation benefits as follows:

> The term "wages" as used in this section and KRS 342.143 means, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging, and fuel or similar advantage received from the employer, and *gratuities*

---

[2] The ALJ initially awarded temporary total disability benefits at the rate of $172.81 per week from December 2010 through December 2012, and ultimately awarded permanent partial disability benefits in the amount of $103.69 per week for 425 weeks beginning January 1, 2013. In calculating these benefits, pursuant to the "most favorable to the employee" look-back provision contained in KRS 342.140(1)(d), the ALJ used Sidebottom's wage circumstances prior to her transition from hourly pay plus tips to weekly pay plus tips because doing so was more favorable to Sidebottom.

4

*received in the course of employment from others than the employer to the extent the gratuities are reported for income tax purposes.*

(Emphasis added.)

Because Sidebottom's "gratuities," or tips, at the time of her injury were not "reported for income tax purposes," the UEF contends that they cannot be considered as part of her "wages" for calculating her average weekly wage to determine her workers' compensation benefit. The UEF further argues that because Sidebottom's income was reported to the IRS as a fixed salary of $100.00 per week, the ALJ was required to calculate her average weekly wage pursuant to KRS 342.140(1)(a). KRS 342.140(1)(a) provides that when an injured employee's "wages [at the time her injury] were fixed by the week, the amount so fixed shall be the average weekly wage."

Sidebottom acknowledges the effect of KRS 342.140(6) and agrees that the unreported tips she received between May 1 and her December 3 injury may not be used in the computation of her average weekly wage. There is no doubt that gratuities not reported for tax purposes may not be counted as income when calculating an injured employee's average weekly wage calculation. But as the ALJ concluded, the application of KRS 342.140(6) does not alter the reality that she is an employee with variable income derived from gratuities; it does not convert her to an employee earning a fixed weekly wage.

In contrast with KRS 342.140(1)(a), KRS 342.140(1)(d) governs the calculation of the applicable average weekly wage for employees whose weekly pay may vary because they are paid by "the day, hour, or by the output of the employee." KRS 342.140(1)(d) provides that for such employees

5

the average weekly wage shall be the wage *most favorable* to the employee computed *by dividing by thirteen* (13) *the wages* (not including overtime or premium pay) of said employee *earned* in the employ of the employer *in the first, second, third, or fourth period* of thirteen (13) consecutive calendar weeks *in the fifty-two (52) weeks immediately preceding the injury.*

(Emphasis added.)

Under KRS 342.140(1)(d), the 52-week year preceding the injury is divided into thirteen-week quarters. The average weekly earnings for each quarter is then calculated and the quarter with the highest ("most favorable") average weekly wage is the one used to compute the weekly compensation benefit for the injured employee. The ALJ used that method to determine Sidebottom's average weekly wage.

Of course, Sidebottom's actual income for the entire 52 weeks that preceded her injury included her tips. But because KRS 342.140(6) forbids consideration of *unreported* tips, the ALJ included her tip income only for the weeks that preceded May 1 because those are the only weeks for which tip income was reported for tax purposes. The tips earned by Sidebottom after May 1 were not reported, and were therefore excluded. Despite the fact that she may have actually been taking home more earnings after May 1 than before, with the exclusion of unreported tips *after* May 1, 2010, it naturally follows that her quarter of most advantageous earnings would have occurred *before* May 1, 2010.

Nevertheless, the UEF contends that because the only income being reported for Sidebottom after May 1 was $100.00 per week, with nothing extra

6

in tips, she is bound to that amount as her average weekly wage. In effect, UEF argues that the income being reported to the IRS at the time of the injury is dispositive of the average weekly wage to be used in calculating Sidebottom's workers' compensation benefits. We conclude that a proper application of KRS 342.140(6) does not produce that result. We agree with the Board and Court of Appeals that the ALJ properly calculated Sidebottom's average weekly wage based upon KRS 342.140(1)(d) rather than KRS 342.140(1)(a).

The average weekly wage of an injured worker must be decided on a case-by-case basis, and must take into account the unique facts and circumstances of each case. *Huff v. Smith Trucking*, 6 S.W.3d 819, 822 (Ky. 1999). Ultimately, the goal in calculating the average weekly wage is to ensure that the claimant's benefit rate is based upon what the worker would have expected to earn had the injury not occurred. *Desa International, Inc. v. Barlow*, 59 S.W.3d 872, 875 (Ky. 2001).

It is not disputed that Sidebottom was compensated by tips from customers up until the date of her injury and that those tips were a significant share of her actual earnings. The fact that Sidebottom's tip income was not reported for tax purposes does not alter the reality that she was paid a variable wage based upon a "wage plus tips" arrangement. The UEF's position would require us to ignore that reality.

By excluding unreported income from a worker's average weekly wage calculation, KRS 342.140(6) reduces the amount of earnings that can be considered; it does not change the nature of the worker's pay or the method to

7

be used for calculating the average weekly wage based upon the nature of the worker's pay. The application of the UEF's theory of this case would unjustifiably expand the rule beyond the words of the statute, which require only the exclusion of unreported income, and extend it to create the legal fiction that one who is actually paid a variable wage is instead deemed to be a fixed weekly wage employee.

In strict compliance with KRS 342.140(6), the ALJ did not include Sidebottom's unreported tip income in his calculation of her average weekly wage. Thus, Sidebottom is properly deprived of the benefit she could otherwise have gained by applying the potentially higher total income she received after the May 1, 2010 transition.[3] Concurrently, the UEF received a corresponding advantage in the form of a lower payment obligation.

We reject UEF's argument that as an additional consequence of the tax reporting rule, the ALJ was further compelled to disregard Sidebottom's true status as a variable wage employee and calculate Sidebottom's average weekly wage as if she was a fixed weekly wage employee. We do not perceive the adoption of that legal fiction as a necessary and statutorily-mandated consequence of the tax reporting rule of KRS 342.140(6). *See Jones v. Crummies Creek Coal Co.*, 264 S.W.2d 294, 296 (Ky. 1953) ("It is a familiar rule

---

[3] As a component of its argument UEF asserts that "an employee should not benefit from his own wrongdoing." However, again, Sidebottom *was* punished for her wrongdoing by not being allowed to calculate her income based upon her post-raise earnings, which would have resulted in a higher award. Presumably she also suffered adverse consequences imposed by the IRS for failing to report her tips on her 2010 tax return.

of construction that the Workmen's Compensation law should be liberally construed in favor of injured employees and their dependents." (citations omitted)).

After properly excluding all unreported earnings, the ALJ correctly utilized Sidebottom's wage data from the most advantageous quarter of the 52-week period preceding her injury, pursuant to KRS 342.140(1)(d), and calculated her average weekly wage accordingly. The Board and the Court of Appeals properly affirmed that decision.

## III. CONCLUSION

For the foregoing reasons the opinion of the Court of Appeals is affirmed. Pursuant to that opinion, this matter is remanded to the ALJ for additional findings relating to the three-times multiplier as set forth in the decision of the Workers' Compensation Board.

All sitting. All concur.

COUNSEL FOR APPELLANT COMMONWEALTH OF KENTUCKY, UNINSURED EMPLOYERS' FUND:

Charles Davis Batson
Assistant Attorney General
Uninsured Employers' Fund

COUNSEL FOR APPELLEE KARA SIDEBOTTOM, A/K/A KARA HARVILLE:

Tamara Todd Cotton
Stephanie Nicole Wolfinbarger
Cotton Wolfinbarger & Associates PLLC

COUNSEL FOR APPELLEE WHITNEY BRAND INC.:

Not Represented By Counsel