Opinion issued July 25, 2019



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00955-CV

————————————

**LAURIE MEJIA-ROSA, Appellant**

**V.**

**JOHN MOORE SERVICES, INC., Appellee**

On Appeal from the 215th District Court
Harris County, Texas
Trial Court Case No. 2014-00998

## MEMORANDUM OPINION

Laurie Mejia-Rosa appeals the trial court's rendition of summary judgment in favor of appellee, John Moore Services, Inc. ("JMS"), on her respondeat superior and negligent hiring, training, supervision, monitoring, retention, and entrustment, and gross negligence claims for injuries she sustained after being

struck by a van driven by a JMS employee. In two issues, Mejia-Rosa argues that the trial court erred in granting JMS's summary-judgment motion on no-evidence and traditional grounds because she presented evidence raising a genuine issue of material fact for each of her claims.

JMS argues that we lack jurisdiction over this appeal. We disagree and affirm the trial court's summary-judgment order.

## Background

Mejia-Rosa was walking her dogs in the parking area of her apartment complex when she was struck by a JMS van driven by Kim Allen Madden.[1] According to her live petition, Mejia-Rosa was thrown through the air and sustained injuries including a massive laceration on the back of her head.

Mejia-Rosa sued JMS as well as two other defendants who are not parties to this appeal, namely, IT-Fountains of Tomball, Ltd., the owner of the apartment complex, and Henry S. Miller Realty Management, LLC, the manager of the apartment complex.

JMS filed a hybrid motion for summary judgment on all of Mejia-Rosa's claims against it. In support of its traditional motion, JMS attached Madden's affidavit and deposition testimony. In his affidavit, Madden stated that the accident occurred as he entered the parking lot of his apartment complex at the end of his

---

[1] Mejia-Rosa's petition names Madden as a defendant but does not assert a claim against him.

2

work day. He also stated that he was not in the course and scope of his employment, on any special mission, or on call for JMS.

In his deposition testimony, Madden stated that he began working as an electrician for JMS on February 10, 2000. His "usual work hours" are 7:00 a.m. to 6:00 p.m. Before he was hired, he had to pass a 400-question test, covering driver competence as well as other aspects of his employment. Once hired, Madden was permitted to drive a JMS van "right away." His training consisted of a ride-along over the first three days of his employment, as well as weekly "safety training" that "sometimes" covered driver safety.

Madden also testified that during his first year of employment with JMS, he received two traffic citations. The first was for his involvement in a "four-car pileup" accident while driving his JMS van. He explained that "the rear-end truck made everybody else bump into each other because somebody in the front pulled out in front." He also stated that he "shouldn't have been responsible," but "the cop didn't see the accident, so he gave everybody a ticket." His second citation was a red-light camera ticket. Madden also stated that JMS had never designated him a "high risk driver," placed him on probation for his driving, or suspended his driving privileges.

The accident happened at 6:45 p.m. on December 19, 2013, when Madden was driving home from work. He was not on call for JMS (nor had he ever been on

3

call for JMS) and was not his cell phone. He was driving five miles per hour in the parking lot of the apartment complex where both he and Mejia-Rosa were residents, when Mejia-Rosa "darted out in front of" him from between parked cars. Before he could stop, his van struck her, knocking her to the ground.

In addition to Madden's affidavit and deposition testimony, JMS presented evidence showing that before hiring and entrusting Madden with the company van, it had obtained his Driver Record Service Report indicating that he possessed a valid unrestricted driver's license and that his three-year driving record was "clear."

In her response, Mejia-Rosa attached records for Madden's JMS cell phone. The records indicate that on the evening of the accident, Madden was on his cell phone for 9 minutes at 5:47 p.m., 5 minutes at 6:11 p.m., 3 minutes at 7:18 p.m., and 4 minutes at 7:31 p.m. Mejia-Rosa also attached JMS's cell phone policy, which states that JMS cell phones do not allow access to outside numbers and are only to be used for business purposes.

Mejia-Rosa also attached JMS's On-Call Policy, Employee Handbook, and Fleet Safety Program Manual. The On-Call Policy and Employee Handbook state that JMS employees "in certain departments," including electricians, may be required to take call "during certain times of the year" and "must be readily reachable by telephone." JMS's Fleet Safety Program Manual states that when a

4

JMS driver receives two or more moving violations within one year, he will be designated a "High Risk Driver," and as such, will be given additional driver safety training and either be placed on probation or have his driving privileges suspended. The Fleet Safety Program Manual also states that JMS will provide periodic driver safety training and obtain annual driving records for its drivers.

On May 15, 2015, the trial court granted JMS's motion, rendering summary judgment on both traditional and no-evidence grounds on Mejia-Rosa's respondeat superior and negligent entrustment claims, and on no-evidence grounds on her remaining claims of gross negligence and negligent hiring, training, supervision, monitoring, and retention.

Mejia-Rosa filed an unopposed motion to sever asking that the summary-judgment order be severed from the remaining claims and parties so that it would be a final, appealable judgment. The trial court granted Mejia-Rosa's motion but its severance order (the "original severance order") did not designate the summary-judgment order as one of the documents to be transferred to the new cause (the "severed cause"). And the original severance order expressly stated that it "does NOT dispose of the severed case, but will keep the case ACTIVE."

Mejia-Rosa instituted this appeal by filing a notice of appeal in the underlying cause (the "original cause"). One month later, on January 19, 2018, the trial court signed an amended severance order, this time stating that all of

5

Mejia-Rosa's claims against JMS are severed, and specifically identifying the summary-judgment order as one of the documents to be transferred to severed cause. The order also stated that its purpose was "to render final for purposes of appeal" May 15, 2015 summary-judgment order.

Mejia-Rosa then timely filed a notice of appeal in the severed cause (the "second notice of appeal"), which she states in her reply brief she did "solely out of an abundance of caution as a result of the confusion that may be caused by the two different, but very similar cause numbers relating to the same appeal."

Upon learning that the clerk of this Court treated the second notice of appeal as its own separate, independent cause with its own cause number, 01-18-00129-CV (the "second appeal"), Mejia-Rosa filed an amended notice of appeal in this cause, asking this Court to consolidate the second appeal into this appeal. The second appeal was dismissed for want of prosecution.

**Jurisdiction**

Before conducting our review, we address JMS's contention that we lack subject-matter jurisdiction to review the summary-judgment order. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (reviewing court must ensure that it has subject-matter jurisdiction before proceeding to merits of appeal). JMS argues that, when Mejia-Rosa commenced this appeal by filing her notice of appeal in the original cause, (1) the summary-judgment order was interlocutory

and (2) JMS was no longer a party. According to JMS, the trial court's summary-judgment order could only have been perfected in the severed cause.

Absent a statute allowing an interlocutory appeal, a party may only appeal from a final judgment. TEX. CIV. PRAC. & REM. CODE §§ 51.012 (authorizing appeal from final judgment of district or county courts where amount in controversy exceeds $250), 51.014 (authorizing appeal from certain interlocutory orders); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) (appellate courts have jurisdiction only over appeals from final judgments and those interlocutory orders specifically authorized by statute). When, as here, there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or clearly and unequivocally states that it does. *Lehmann*, 39 S.W.3d at 205; *Davati v. McElya*, 530 S.W.3d 265, 266–67 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Because Mejia-Rosa's claims against IT-Fountains of Tomball and Henry S. Miller Realty Management remained pending, the order granting JMS's summary-judgment motion was interlocutory when she filed the notice of appeal in the original cause. *See Lehmann*, 39 S.W.3d at 206 ("As the order recites and as the record demonstrates, the defendant named in the order was not the only defendant remaining in the case. Thus, we conclude that a final and appealable judgment was not rendered . . . ."); *see also Butler v. Whitten*, No. 02-13-00306-CV, 2014 WL

7

24232, at *1 (Tex. App.—Fort Worth Jan. 2, 2014, no pet.) (mem. op.) (orders dismissing plaintiff's claims against some defendants were interlocutory because of plaintiff's remaining claims against other defendants).

A court may make an otherwise interlocutory summary-judgment order that disposes of all claims against a party final for purposes of appeal by severing the cause and party into a different cause. *Avni v. Dosohs I, Ltd.*, No. 01-15-00459-CV, 2016 WL 2745421, at *1 (Tex. App.—Houston [1st Dist.] May 10, 2016, no pet.) (mem. op.); *see also Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d 311, 312 (Tex. 1994) (judgment in case involving multiple parties may be made final as to some parties for purposes of appeal by trial court's "severing the causes and parties disposed of by the judgment into a different cause").

But if the severance order indicates further proceedings are to be conducted in the severed action, it does not effect a final judgment. *Diversified Fin. Sys., Inc. v. Hill, Heard, O'Neal, Gilstrap & Goetz, P.C.*, 63 S.W.3d 795, 795 (Tex. 2001); *Avni*, 2016 WL 2745421, at *2. Such is the case with the original severance order here—it did not include the summary-judgment order in its list of documents to be transferred to the severed cause and expressly stated that it "does NOT dispose of the severed case, but will keep the case ACTIVE." Thus, the summary-judgment order remained interlocutory. *See Diversified Fin. Sys.*, 63 S.W.3d at 795 (severance order stating severed claims would "proceed as such to final judgment

8

or other disposition in this Court" precluded final judgment in severed action); *Martinez*, 875 S.W.2d at 313–14 (severance order permitting additional defendant to be added to severed "final" judgment was interlocutory).

As a result, the notice of appeal of the summary-judgment order Mejia-Rosa filed in the original cause was premature. But it was not ineffective. Under Texas Rule of Appellate Procedure 27.1(a), when a party files a notice of appeal prematurely, the notice is "effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal." TEX. R. APP. P. 27.1(a). Following such event, the judgment becomes final and may be appealed, even without a separate physical file or different cause number. *See Martinez*, 875 S.W.2d at 313.

When, on January 19, 2018, the trial court amended its severance order to state that all of Mejia-Rosa's claims against JMS were severed from the original cause, expressly identify the summary-judgment order as one of the documents to be transferred to severed cause, and recite that its purpose was "to render final for purposes of appeal" May 15, 2015 summary-judgment order, it unequivocally indicated its intent to make the order final and appealable. *See Lehmann,* 39 S.W.3d at 205; *Avni*, 2016 WL 2745421, at \*2. Thus, on January 19, 2018, Mejia-Rosa's notice of appeal of the original cause became effective. *See* TEX. R. APP. P. 27.1(a); *Alvarado v. Lexington Ins. Co.*, 389 S.W.3d 544, 549 & n.5 (Tex.

9

App.—Houston [1st Dist.] 2012, no pet.) (prematurely filed notice of appeal effective and deemed filed when trial court granted motion to sever and rendered final judgment in favor of defendant); *see also Johnson v. Nat'l Indem. Co.*, No. 14-15-00197-CV, 2016 WL 6809165, at *1 (Tex. App.—Houston [14th Dist.] Nov. 17, 2016, no pet.) (mem. op.) (premature notice of appeal filed pre-severance effective to appeal interlocutory order made final by severance); *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 681 (Tex. App.—Dallas 2000, no pet.) ("[A] document filed in an attempt to appeal an interlocutory order that later becomes final serves to appeal the final judgment."). And, because Mejia-Rosa's notice of appeal of the original cause invoked our appellate jurisdiction, the notice of appeal she filed in the severed action was unnecessary to perfect her appeal. *See Alvarado*, 389 S.W.3d at 549 & n.5 (dismissing second appeal as moot); *Lerma v. Forbes*, 144 S.W.3d 18, 20 (Tex. App.—El Paso 2004, no pet.) (dismissing second appeal on its own motion and consolidating record with first appeal).

Finally, we briefly address JMS's argument that, because the trial court's original severance order removed JMS from the original cause, Mejia-Rosa's notice of appeal of the original cause was ineffective as to JMS. Texas Rule of Appellate Procedure 25.1(b) states that "[t]he filing of a notice of appeal by any party invokes the appellate court's jurisdiction *over all parties to the trial court's judgment or order appealed from*." TEX. R. APP. P. 25.1(b) (emphasis added).

10

Because JMS was a party to the summary-judgment order, the notice of appeal invoked our jurisdiction over it.

**Summary Judgment**

Mejia-Rosa challenges the trial court's rendition of summary judgment on traditional and no-evidence grounds on her respondeat superior and negligent entrustment claims, and on no-evidence grounds on her negligent entrustment, negligent hiring, training, supervision, monitoring, and retention, and gross negligence claims.

## A.   Standard of Review and Applicable Law

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.

A party seeking summary judgment may move for both traditional and no-evidence summary judgment. *Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004); *see* TEX. R. CIV. P. 166a(c), (i). When a party has sought summary judgment on both grounds, we typically review first the propriety of the summary judgment under the no-evidence standard. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d

244, 248 (Tex. 2013); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Deweese v. Ocwen Loan Servicing L.L.C.*, No. 01-13-00861-CV, 2014 WL 6998063, at *2 n.1 (Tex. App.—Houston [1st Dist.] Dec. 11, 2014, no pet.) (mem. op.); *Poag v. Flories*, 317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. denied). However, in the interest of efficiency, we may review a summary judgment under the traditional standard first if it would be dispositive. *See Deweese*, 2014 WL 6998063, at *2 n.1; *Poag*, 317 S.W.3d at 825; *see also* TEX. R. APP. P. 47.1.

A party moving for traditional summary judgment bears the burden of proving that no genuine issues of material fact exist on at least one essential element of the cause of action asserted and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). A matter is conclusively established if reasonable people could not differ as to the conclusions to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant meets its burden, the burden then shifts to the nonmovant to raise a fact issue precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

Following an adequate time for discovery, a party may move for summary judgment on the basis that there is no evidence of one or more essential elements

12

of a claim on which the adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). To defeat a no-evidence motion, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements. *Lightning Oil*, 520 S.W.3d at 45. "More than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 376 (Tex. App.—Houston [1st Dist.] 2012, pet denied) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). We consider the evidence in the light most favorable to the nonmovant and indulge every reasonable inference from the evidence in the nonmovant's favor. *Lightning Oil*, 520 S.W.3d at 45.

When, as here, the summary-judgment order does not specify the grounds on which it was granted, the appealing party must demonstrate that none of the proposed grounds is sufficient to support the judgment. *West v. SMG*, 318 S.W.3d 430, 437 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We will affirm a summary-judgment ruling if any of the grounds asserted in the motion are meritorious. *Lightning Oil*, 520 S.W.3d at 45; *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

## B. Respondeat Superior

In her first issue, Mejia-Rosa argues that the trial court erred in granting JMS's summary-judgment motion on her claim that JMS is liable for Madden's negligence and gross negligence based on the doctrine of respondeat superior because her evidence presented a genuine issue of material fact as to whether Madden was acting in the course and scope of his employment when the accident occurred.

The common-law doctrine of respondeat superior, or vicarious liability, is an exception to the general rule that a person has no duty to control another's conduct. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018). It provides that "liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them." *Painter*, 561 S.W.3d at 130 (quoting *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002)).

To prove an employer's vicarious liability for an employee's negligence, the plaintiff must show that, at the time of the negligent conduct, the employee was acting in the course and scope of his employment. *Painter*, 561 S.W.3d at 131. In the "course and scope of employment" means within the scope of the employee's general authority, in furtherance of the employer's business, and for the accomplishment of the object for which he was hired. *Id.* (quoting *Goodyear Tire*

*& Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007)). Additionally, to be within the scope of employment, the employee's act must be of the same general nature as, or incidental to, the authorized conduct. *Id.* Thus if an employee deviates from the performance of his duties for his own purposes, his employer is not responsible for what occurs during that deviation. *Id.*

Mejia-Rosa challenged the trial court's rendition of summary judgment on her respondeat superior claim on both no-evidence and traditional grounds. Because it is dispositive, we begin our review with the traditional motion. *See Deweese*, 2014 WL 6998063, at *2 n.1; *Poag*, 317 S.W.3d at 825; *see also* TEX. R. APP. P. 47.1.

In its traditional motion, JMS relied on the "coming-and-going rule," which states that an employee is not in the course and scope of his employment while driving to and from work. *See Painter*, 561 S.W.3d at 136, 139. It argued, and we agree, that Madden's affidavit and deposition testimony conclusively proved that he was on his way home from work, and thus was not acting in the course and scope of his employment when the accident occurred. *See City of Keller*, 168 S.W.3d at 816 (matter conclusively established if reasonable people could not differ as to conclusions to be drawn from evidence). Thus, the burden shifted to Mejia-Rosa. *See Siegler*, 899 S.W.2d at 197 (if traditional summary-judgment

15

movant conclusively establishes entitlement to judgment, burden shifts to nonmovant to raise genuine, material fact issue precluding summary judgment).

To survive summary judgment, Mejia-Rosa was required to present evidence that Madden's actions were within the scope of his general authority, in furtherance of JMS's business, for the accomplishment of the object for which he was hired, and of the same general nature as or incident to the authorized conduct. *See Painter*, 561 S.W.3d at 131. In her response, Mejia-Rosa argued that a fact issue exists as to whether the coming-and-going rule applies in this case because Madden was driving a JMS van.[2]

Mejia-Rosa is correct that because Madden was driving a JMS van when the accident occurred, a presumption arose that he was acting within the scope of his employment. *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex. 1971) ("It is recognized in Texas that when it is proved that the truck was owned by the defendant and that the driver was in the employment of defendant, a presumption arises that the driver was acting within the scope of his employment when the accident occurred."); *see also Lara v. City of Hempstead*, No. 01-15-00987-CV, 2016 WL 3964794, at *4 (Tex. App.—Houston [1st Dist.] July

---

[2] Mejia-Rosa has not argued that Madden was on a "special mission." *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 136 (Tex. 2018) (recognizing exception to coming-and-going rule "when an employee has undertaken 'a special mission at the direction of his employer' or is otherwise performing 'a service in furtherance of [his] employer's business with the express or implied approval of [his] employer.'" (citation omitted)).

21, 2016, pet. denied) (mem. op.) (in governmental immunity context, "[i]n automobile collision cases [under the Tort Claims Act] a presumption arises that the driver was acting within the scope of his employment by the defendant when it is proved that the employer owned the vehicle and employed the driver"). The presumption "is not evidence but rather a rule of procedure . . . that is overcome when positive evidence to the contrary is introduced." *Green v. Ransor, Inc.*, 175 S.W.3d 513, 516 (Tex. App.—Fort Worth 2005, no pet.). Relevant here, if there is evidence that the driver was on a personal errand, or otherwise not in the furtherance of his employer's business, the presumption vanishes. *Williams v. Great W. Distrib. Co. of Amarillo*, No. 12-16-00095-CV, 2016 WL 7322802, at *3 (Tex. App.—Tyler Dec. 16, 2016, no pet.) (mem. op.).

Madden's affidavit and deposition testimony effectively rebutted the presumption by establishing that he was returning home from work and was not acting in furtherance of JMS's business when the accident occurred. *See, e.g.*, *Molina v. City of Pasadena*, No. 14-17-00524-CV, 2018 WL 3977945, at *4 (Tex. App.—Houston [14th Dist.] Aug. 21, 2018, no pet.) (mem. op.) (in sovereign immunity context, presumption was rebutted where accident occurred while employee was returning to work after eating lunch); *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 47–48 (Tex. App.—Fort Worth 2002, no pet.) ("In this case, [employee] stated in his affidavit that, instead of driving directly to [worksite], he

drove the tractor-trailer to his sister's house to see if she would pick him up at [the worksite]. He was leaving his sister's house when the accident occurred. This evidence that [he] went on a personal errand, from which he was returning when the accident occurred, rebuts the presumption that he was in the course and scope of his employment."); *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 637–38 (Tex. App.—San Antonio 1993, no writ) (plaintiff failed to raise fact issue regarding course and scope of employment where driver, who was in company vehicle and on 24–hour call, got into an accident returning to worksite after having left to have dinner in another town).

The burden then shifted to Mejia-Rosa to produce other evidence that Madden was in the course and scope of his employment. *See Molina*, 2018 WL 3977945, at *4 (once employer rebuts presumption, "[i]t is then the plaintiff's burden to produce other evidence that the driver was in the course and scope of his employment" (citing *Robertson Tank Lines*, 468 S.W.2d at 358)); *Williams*, 2016 WL 7322802, at *3 ("Once the presumption is rebutted, the burden is on the plaintiff to produce other evidence that the driver was within the scope of his employment.")

Mejia-Rosa responded by presenting a record of calls placed and received on Madden's company cell phone, which she argued establishes a fact issue regarding course and scope. But the phone records do not show that Madden was on a phone

18

call *at the time of* the accident. Instead, they indicate that the last call placed or received on his company cell phone ended a half-hour before the accident and that there were two brief calls beginning about a half-hour after the accident. *See Univ. of Tex. M.D. Anderson Cancer Ctr. v. Baker*, 401 S.W.3d 246, 261 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Mayes*, 236 S.W.3d at 757) ("The general rule for respondeat superior requires . . . that the employee be acting in the course and scope of employment *when the negligence occurs*."). Further, there is no evidence in the record revealing the substance of these calls, i.e., whether they were work-related. *See, e.g.*, *Atlantic Indus., Inc. v. Blair*, 457 S.W.3d 511, 516 (Tex. App.—El Paso 2014), *reversed on other grounds*, 482 S.W.3d 57 (Tex. 2016) (driver's testimony that while driving around, he placed phone call to supervisor three and-a-half hours prior to accident and could not recall specifics of call but conceded that in addition to discussing personal issues, he and supervisor could have discussed work was not evidence that he was operating in course and scope of his employment when accident occurred).

Even if the record contained evidence that the phone calls were work-related, such evidence would be insufficient to present a fact issue here because the purpose of Madden's drive was simply to go home, not to further any business of JMS. *Compare Mayes*, 236 S.W.3d at 757 (evidence tire company employee was driving company truck loaded with tires he planned to deliver later, was available

19

via pager 24 hours a day, and was not restricted from using the truck for personal business, did not raise genuine issue of material fact as to whether he was acting in furtherance of employer's business or for accomplishment of object for which employer hired him because he was on personal errand at the time of the accident), *and J & C Drilling*, 866 S.W.2d at 637 (evidence that employee who had accident while on call and driving company car back to worksite after getting something to eat picked up two of his "hands" at some point during trip did not raise issue of course and scope absent evidence that he did so at direction of or for benefit of employer), *with Painter*, 561 S.W.3d at 137–39 (fact issue existed regarding course and scope when accident occurred while employee was driving crew to bunkhouse and evidence showed employee's job duties included driving crew between bunkhouse and drilling site).

Thus, the cell phone records do not rebut JMS's evidence showing that Madden was driving home from work and was not engaged in JMS business when the accident occurred. Accordingly, the records do not present a fact issue with regard to whether Madden was engaged in JMS's business at the time of the accident. *See Mayes*, 236 S.W.3d at 757; *see also Bell v. VPSI, Inc.*, 205 S.W.3d 706, 718 (Tex. App.—Fort Worth 2006, no pet.) ("Even when driving a vehicle furnished by the employer, the employee is generally not in the course and scope

20

while going to and returning from work unless he is directed by his employer or furthering the employer's business.").

Mejia-Rosa next argued that JMS's internal policies establish a fact issue as to whether Madden was on call at the time of the accident. Specifically, JMS's "On-Call Policy" and Employee Handbook state that JMS electricians may be required to be on call "during certain times of the year" and "must be readily reachable by telephone." But evidence that an employee in Madden's position may be required to be on call at certain times of the year does nothing to controvert Madden's direct testimony that he was not on call at the time of the accident, nor had he ever been on call for JMS. Madden's testimony rebutted any inference that might have otherwise been drawn from JMS's internal company policies.

Moreover, "[b]eing subject to call, without more, is insufficient to place an employee within the course and scope of his employment" for vicarious liability purposes. *Blair*, 457 S.W.3d at 516. This is so even if the on-call employee was driving a company car or a car bearing the company's logo when the accident occurred. *See, e.g.*, *Mayes*, 236 S.W.3d at 757 (summary-judgment evidence that employee on personal errand was driving company truck loaded with company products for delivery, was available via pager 24 hours a day, and was not restricted from using truck for personal business, insufficient to raise genuine issue of fact regarding course and scope); *Blair*, 457 S.W.3d at 517 (evidence that

21

employee was on call and driving truck with company logo insufficient to support determination that he was within course and scope of his employment at time of accident); *J & C Drilling*, 866 S.W.2d at 637 (fact that employee involved in accident while driving company car was required to be on 24-hour call "not sufficient to raise an issue of course and scope"). Thus, even if it were genuinely at issue, Madden's on-call status, even combined with the fact that he was driving a company van, would be insufficient to defeat JMS's summary-judgment motion.

Left with the singular undisputed fact that Madden was a JMS employee and was driving a company van when the accident occurred and given Madden's uncontroverted testimony establishing that he was not working at the time of the accident, we conclude that Mejia-Rosa has failed to present a genuine issue with regard to course and scope. *See Robertson Tank Lines*, 468 S.W.2d at 359–60 ("Although the facts of ownership of the truck and the employment of the driver remain in the case after the presumption is rebutted, those facts standing alone have no probative value on the actions or legal relationship of the driver at the time of [the] accident; they do not support an inference, or the conclusion, that he was acting within the scope of his employment."); *Williams*, 2016 WL 7322802, at *3 ("Unaided by the presumption or other affirmative evidence, the fact that the employee was driving his employer's vehicle at the time of the accident does not constitute probative evidence that the employee was acting within the scope of his

22

employment and is insufficient to raise a fact issue."); *Bell*, 205 S.W.3d at 716 ("Once the presumption is rebutted, ownership of the vehicle by the employer and employment of the driver are insufficient to raise the issue of course and scope of employment.").

Because the evidence conclusively established that Madden was not acting in the course and scope of his employment at the time of the accident, the trial court properly granted JMS's respondeat superior summary-judgment motion on traditional grounds. *See* TEX. R. CIV. P. 166a(c); *see also Mayes*, 236 S.W.3d at 757 (summary judgment properly granted when uncontroverted testimony of driver showed he was on personal errand at time of accident).

We overrule Mejia-Rosa's first issue.

## C. Direct Liability

In her second issue, Mejia-Rosa argues that the trial court erred in granting JMS's summary-judgment motion because she presented evidence to raise genuine issues of material fact as to whether JMS was negligent in entrusting a company van to Madden, and in hiring, retaining, supervising, monitoring, and training him.

### 1. Negligent Entrustment

To establish liability under a negligent entrustment theory for injuries arising from a vehicle collision, the plaintiff must show that: (1) the defendant entrusted the vehicle to the driver; (2) the driver was unlicensed, incompetent, or reckless;

23

(3) at the time of the entrustment, the defendant knew or should have known that the driver was an unlicensed, incompetent, or reckless driver; (4) the driver was negligent on the occasion in question; and (5) the driver's negligence proximately caused the accident. *Mayes*, 236 S.W.3d at 758; *Magee v. G & H Towing Co.*, 388 S.W.3d 711, 717 (Tex. App.—Houston [1st Dist.] 2012, no pet.)

JMS moved for summary judgment on Mejia-Rosa's negligent entrustment claim on both traditional and no-evidence grounds. We first address the no-evidence motion. *See Merriman*, 407 S.W.3d at 248 (appellate courts should ordinarily first address no-evidence motion).

In its no-evidence motion, JMS challenged the second and third negligent-entrustment elements. Regarding the first, Mejia-Rosa responded by presenting evidence of the two citations Madden received in his first year driving the company van, which she argued raised an issue regarding whether he was a reckless or incompetent driver (such that JMS was negligent in *continuing* to entrust Madden with the van).[3]

In determining whether the two citations are sufficient to create a fact issue as to whether Madden was an incompetent or reckless driver, we are mindful of the "important distinction between an operator who is 'incompetent or reckless' and one who is merely 'negligent.'" *4Front Engineered Sols., Inc. v. Rosales*, 505

---

[3]     Mejia-Rosa does not argue that Madden was unlicensed.

S.W.3d 905, 909–10 (Tex. 2016). Because negligent entrustment "requires a showing of more than just general negligence," it is not enough to show, for example, that a driver might have a momentary lapse in judgment or otherwise act negligently. *Id.* at 910–11.

Madden received a camera ticket for running a red light and a citation for rear-ending the car in front of him in a four-car pileup. Under similar facts, the Supreme Court of Texas rendered a take-nothing summary judgment on an injured motorist's negligent entrustment claims. In *Goodyear Tire & Rubber Co. v. Mayes*, the court held that evidence showing that in the three-year period before he was hired, the driver had been cited for driving without liability insurance and for rear-ending another car, and that while employed by the defendant, he had received a speeding ticket, was insufficient to raise a fact issue on recklessness or incompetence. *See* 236 S.W.3d at 758. Here, as in *Mayes*, evidence of one citation for a moving violation and one for rear-ending another car is insufficient to survive summary-judgment. *See id.*; *see also Robson v. Gilbreath*, 267 S.W.3d 401, 406 (Tex. App.—Austin 2008, pet. denied) ("Mere involvement in a collision does not create an inference or conclusion that a driver is incompetent or reckless."); *compare Hous. Cab Co. v. Fields*, 249 S.W.3d 741, 746–47 (Tex. App.— Beaumont 2008, no pet.) (two convictions for driving without insurance, one citation for injury accident, and one license suspension for failure to carry

25

insurance legally insufficient to support jury's reckless or incompetent finding), *and Nobbie v. Agency Rent-A-Car, Inc.*, 763 S.W.2d 590, 593 (Tex. App.—Corpus Christi 1988, writ denied) (two license suspensions, one speeding ticket, and one citation for defective headlamp legally insufficient to support incompetence or recklessness finding), *with Blair*, 457 S.W.3d at 518 (driver's five DWI arrests including two convictions supported jury's recklessness finding in negligent entrustment claim), *and Pesina v. Hudson*, 132 S.W.3d 133, 135, 139 (Tex. App.—Amarillo 2004, no pet.) (summary-judgment evidence of three incidents of driving under the influence of drugs or alcohol, two minor collisions, and one speeding ticket in two-year period preceding accident sufficient to raise fact issue as to driver's recklessness or incompetence).

Finally, we briefly address Mejia-Rosa's argument that JMS's failure to observe its own High Risk Driver policies is evidence of breach. Because JMS's actions prove nothing about Madden's driving capabilities, evidence that it did not comply with its internal policies does not relieve Mejia-Rosa of her summary-judgment burden; she still must present evidence that Madden was a reckless or incompetent driver. *See Hous. Cab*, 249 S.W.3d at 748 (rejecting argument that company's violation of its own policy can be legally sufficient evidence of incompetence for negligent entrustment claim).

Accordingly, we hold that Mejia-Rosa failed to raise a genuine fact issue regarding whether Madden was an incompetent or reckless driver. *See* TEX. R. CIV. P. 166a(i); *Lightning Oil*, 520 S.W.3d at 45.

### 2. General Negligence

In her live petition, Mejia-Rosa alleged that JMS was negligent in hiring and retaining Madden ("negligent hiring claims"), as well as in training, supervising, and monitoring him ("negligent training and supervision claims").[4] These are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability. *See Black v. Smith Protective Servs., Inc.*, No. 01-14-00969-CV, 2016 WL 5400565, at *3 (Tex. App.—Houston [1st Dist.] Sept. 23, 2016, no pet.) (mem. op.); *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.). Accordingly, to prevail on each of her claims, Mejia-Rosa must prove that JMS owed her a legal duty, that it breached that duty, and that its breach proximately caused her to suffer damages. *See Black*, 2016 WL 5400565, at *3; *Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). In its no-evidence motion, JMS challenged each of these elements on each of Mejia-Rosa's negligence claims.

---

[4]     We divide these five separate causes of action into two groups for the sake of simplicity and clarity in our analysis.

*Negligent Hiring*

We begin and end our negligent-hiring inquiry with the element of breach. Mejia-Rosa contends that JMS breached a duty to her when it hired Madden because it failed to first "properly evaluate his driving qualifications." According to Mejia-Rosa, the 400-question written test JMS required Madden to pass before it hired him was inadequate because it was not dedicated entirely to driver safety. She also contends that JMS was negligent in retaining Madden after learning that he had received two traffic citations within the first 12 months of his employment. But as explained below, the sufficiency of the measures JMS took to ensure that Madden was a safe driver is immaterial here, because the record contains no evidence that Madden was an unlicensed, incompetent, or unfit driver.

To establish breach in a negligent hiring claim, the plaintiff must show that the defendant created an unreasonable risk of harm to others by hiring someone it knew, or by the exercise of reasonable care should have known, was incompetent or unfit. *Dangerfield*, 264 S.W.3d at 912. "An employer is not negligent when there is nothing in the employee's background that would cause a reasonable employer not to hire or retain the employee." *Martinez v. Hays Const., Inc.*, 355 S.W.3d 170, 180 (Tex. App.—Houston [1st Dist.] 2011, no pet.), *disapproved on other grounds by Gonzalez v. Ramirez*, 463 S.W.3d 499 (Tex. 2015). Thus, Mejia-Rosa must prove that Madden was unfit or incompetent to prevail on her

28

negligent hiring claim. *See Martinez v. Wahl Landscape, Inc.*, No. 04-11-00091-CV, 2012 WL 1363030, at \*4 (Tex. App.—San Antonio Apr. 18, 2012, no pet.) (mem. op.) ("Absent evidence of incompetence, [plaintiffs] cannot support their claims for negligent hiring, retention, and supervision."); *Mireles v. Ashley*, 201 S.W.3d 779, 783 (Tex. App.—Amarillo 2006, no pet.) (to survive summary judgment, plaintiff must present more than a scintilla of evidence employee was an incompetent driver because employer "could not know that [employee] was an incompetent driver unless [he] was, in fact, an incompetent driver"); *Schleicher v. Church & Dwight Co*, No. 01-96-00613-CV, 1998 WL 163699, at \*5 (Tex. App.—Houston [1st Dist.] Apr. 9, 1998, no pet.) ("[B]efore an employer may be held liable under the doctrine of negligent retention, the plaintiff must prove the unfitness or incompetence of the employee.").

For the same reasons we held above that Mejia-Rosa failed to present evidence that Madden was unlicensed, reckless, or incompetent to avoid dismissal of her negligent entrustment claim, we hold that she has not presented evidence establishing a genuine issue of fact as to whether Madden was incompetent or unfit as is necessary to survive no-evidence summary judgment on her negligent hiring claim.[5] That is, the two traffic citations—the only evidence Mejia-Rosa offered to

---

[5] Because authority addressing this element of negligent hiring claims is scant, courts have looked to negligent entrustment caselaw addressing incompetence and recklessness in evaluating whether a driver was unfit or incompetent. *See Farwah*

show that Madden was an incompetent or unfit driver—are not enough to create a fact issue. *See Mayes*, 236 S.W.3d at 758 (citations for driving without liability insurance and rear-ending another car in three-year period prior to hiring and one citation for speeding while employed by defendant insufficient to show driver incompetent or reckless); *Hous. Cab*, 249 S.W.3d at 746–47 (two convictions for driving without insurance, one citation for injury accident, and one license suspension for failure to carry insurance legally insufficient to support recklessness or incompetence finding); *Nobbie*, 763 S.W.2d at 593 (two license suspensions, one speeding ticket, and one citation for defective headlamp legally insufficient to support incompetence or recklessness finding).

Because Mejia-Rosa failed to present evidence of breach, we hold that the trial court properly granted JMS's no-evidence summary-judgment motion on her negligent hiring claim. *See* TEX. R. CIV. P. 166a(i).[6]

---

*v. Prosperous Mar. Corp.*, 220 S.W.3d 585, 598 (Tex. App.—Beaumont 2007, no pet.) (in negligent hiring case, driver's incompetency "typically proven by showing that the driver is unlicensed or reckless" under negligent entrustment caselaw); *Mireles v. Ashley*, 201 S.W.3d 779, 783–84 & 783 n.4 (Tex. App.—Amarillo 2006, no pet.) (consulting negligent entrustment cases to inform incompetence inquiry for negligent hiring claim).

[6] Because we hold that Mejia-Rosa failed to present evidence that Madden was an incompetent or unfit driver, we need not address her argument that JMS breached a standard of care by violating its own High Risk Driver policy. We note, however, that a company's noncompliance with its own internal procedures does not establish a standard of care for a negligence claim. *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2004) ("[Defendant]'s self-imposed policy with regard to inspection of its trailers, taken alone, does not establish the standard of care that a reasonably prudent operator would follow.").

### *Negligent Training*

Mejia-Rosa contends that JMS breached its duty to her by failing to properly train Madden as a driver because "the only driving safety training that Madden received after he was hired consisted of three ride-alongs." Here again, Mejia-Rosa failed to present any evidence of breach.

To satisfy her burden to show that a genuine issue of fact exists as to the element of breach on her negligent training claim, Mejia-Rosa had to present evidence that a reasonably prudent employer would have provided training beyond that which was given. *See Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 312 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (affirming summary judgment on negligent training claim where plaintiff "produced no evidence showing that training or instruction beyond that given by [employer] would be necessary or proper by a reasonably prudent employer"); *see also Najera v. Recana Sols., LLC*, No. 14-14-00332-CV, 2015 WL 4985085, at *7 (Tex. App.—Houston [14th Dist.] Aug. 20, 2015, no pet.) (mem. op.) (summary judgment proof failed to raise genuine issue of material fact on breach of duty to train where plaintiff did not "provide any evidence regarding what training a reasonably prudent employer could or should have provided to prevent or stop the assault"); *Castillo v. Gared, Inc.*, 1 S.W.3d 781, 786 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)

("[Plaintiff] has produced no evidence that the policies advocated . . . are necessary or desirable, or that the failure to have such policies constitutes negligence.").

Mejia-Rosa's only evidence that a reasonably prudent employer would have provided training beyond that which was given was an excerpt from JMS's Fleet Safety Program Manual stating that JMS would provide periodic driver safety training and obtain annual driving records for its drivers. But as the Texas Supreme Court has explained, a company's self-imposed policy or practice, "taken alone, does not establish the standard of care that a reasonably prudent operator would follow." *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2004). We therefore conclude that she failed to present any evidence to show that a reasonably prudent employer would have provided driver training beyond that provided Madden.[7] *See Aleman*, 227 S.W.3d at 312.

Accordingly, we hold that because Mejia-Rosa failed to present a fact issue regarding breach, the trial court properly granted JMS's no-evidence summary judgment motion dismissing her negligent training claim. *See* TEX. R. CIV. P. 166a(i).

---

[7] We also note that Madden's deposition testimony states that he attended a weekly training program that included driver safety.

### 3. Gross Negligence

In her live petition, Mejia-Rosa alleged that JMS was grossly negligent both directly in hiring, training, and entrusting Madden with a company van, and vicariously under the doctrine of respondeat superior.

"[A] gross-negligence finding is relevant only to an assessment of punitive damages." *Nowzaradan v. Ryans*, 347 S.W.3d 734, 741 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see* TEX. CIV. PRAC. & REM. CODE § 41.003 (exemplary damages recoverable for fraud, malice, or gross negligence). A plaintiff may not recover punitive damages unless she proves her entitlement to actual damages. TEX. CIV. PRAC. & REM. CODE § 41.004(a) ("[E]xemplary damages may be awarded only if damages other than nominal damages are awarded."); *Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex. 1993) ("Recovery of punitive damages requires a finding of an independent tort with accompanying actual damages."); *Avdeef v. Powers*, No. 05-11-01369-CV, 2012 WL 3115067, at *1 (Tex. App.—Dallas July 11, 2012, no pet.) (mem. op.) ("Because [plaintiff] asserted no grounds on which he could recover actual damages, he asserted no grounds under which he might be entitled to recover exemplary damages.").

Accordingly, Mejia-Rosa's gross-negligence claims do not survive our determination that the trial court properly granted summary judgment dismissing her predicate claims. *See, e.g.*, *Martinez v. Arafat*, No. 01-15-00161-CV, 2016 WL

743805, at *5 (Tex. App.—Houston [1st Dist.] Feb. 25, 2016, no pet.) (mem. op.) ("Because there is no evidence to support [plaintiff]'s negligence claim against [defendant], his gross negligence claim also fails."); *Samson v. Ghadially*, No. 14-12-00522-CV, 2013 WL 4477863, at *4 n.14 (Tex. App.—Houston [14th Dist.] Aug. 20, 2013, no pet.) (mem. op.) ("Because [plaintiff] adduced no evidence of any of his claims, he also could not establish exemplary damages.").

We overrule Mejia-Rosa's second issue.

## Conclusion

We affirm the trial court's summary judgment in favor of JMS.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Landau.